**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **SAINT LAWRENCE COMMUNICATIONS LLC,** | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO. 2:16-cv-82-JRG |
| **APPLE INC., AT&T MOBILITY, LLC, and CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,** | § § § § § | |
| *Defendants.* | § § | |

## ORDER

Before the Court is Defendants AT&T Mobility, LLC ("AT&T") and Cellco Partnership d/b/a Verizon Wireless' ("Verizon") (collectively, "Carrier Defendants") Motion to Sever and Stay Claims ("Motion"). (Dkt. No. 133.) After considering the same, the Court finds that the Motion should be and is hereby **GRANTED**.

On January 27, 2016, Plaintiff Saint Lawrence Communications LLC ("SLC") filed suit against the Carrier Defendants and Apple, Inc. ("Apple") (collectively, "Defendants"), alleging infringement of five U.S. patents relating to speech encoding and decoding technology in cellphones. (Dkt. No. 1.) SLC alleges that Defendants directly and indirectly infringe the patents-in-suit through "the manufacture, use, sale, importation, and/or offer for sale of products practicing the AMR-WB Standard ("Apple HD Voice phones")." (Dkt. No. 1 at ¶¶ 23, 32, 41, 50, 59.) The only accused products identified by SLC in its Complaint are different versions of the Apple iPhone. (*Id.*) Additionally, the infringement contentions SLC served on each Defendant were identical, identifying "Apple-branded phones . . . that practice and/or are capable of practicing the

Adaptive Multi-Rate-Wideband ("AMR-WB") standard" as the accused products. (Dkt. Nos. 133 at 6; 133-6 at 2–5; 133-7 at 2–5.) Indeed, as SLC itself characterized its own claims, "SLC's infringement claims focus on the implementation of the AMR-WB standard in Apple's products. For the majority of these products, third-party Qualcomm supplies a baseband chip containing the AMR-WB code." (Dkt. No. 108 at 1.)

Rule 21 of the Federal Rules of Civil Procedure provides that "[o]n a motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Courts have long recognized that Rule 21 "authorizes the severance of any claim, even without a finding of improper joinder, when there are sufficient other reasons for ordering a severance." *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968). One such "other reason" for severance, according to the Federal Circuit, exists when a patent owner has sued both a manufacturer and its customers for infringement of the same patents based on the same accused products. *See, e.g., In re Nintendo*, 756 F.3d 1363 (Fed. Cir. 2014). In such instances, the manufacturer is frequently considered to be the "true defendant," and the burdens of litigation should not be imposed on the customer. *Id.* at 1365. *See also Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) ("litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."). Accordingly, courts have developed a practice of severing and staying claims against customers pending resolution of the suit against the manufacturer. *See, e.g., Cellular Communications Equipment LLC v. Apple, Inc.*, No. 6:14-cv-251-KNM, Dkt. No. 254 (E.D. Tex. Aug. 26, 2016) ("*CCE*") (severing and staying claims against AT&T, Verizon, and other carriers in a suit where the accused products were the iPhone and iPad because the "true defendant" was Apple).

This Court has previously devised a three factor test used for determining whether severing and transferring claims against a customer is appropriate. *See Shifferaw v. Emson USA*, No. 2:09-cv-54-TJW-CE, 2010 WL 1064380 (E.D. Tex. March 18, 2010). While the third factor is only relevant in the transfer context (and thus is inapplicable here), the first two factors are: "(1) whether the remaining claims are peripheral to the severed claims," and "(2) whether adjudication of the severed claims would potentially dispose of the remaining claims." *Id.* at *1. Regarding the first factor, "where a single manufacturer is the only entity in the U.S. who makes and sells the only accused products to the retailers, a patent infringement claim against a retailer is peripheral to the claims against the manufacturers." *CCE*, slip op. at 3. As to the second factor, "the manufacturer's case need only have the potential to resolve 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of customer suits." *Id.* at 6.

The Court finds that SLC's claims against the Carrier Defendants are peripheral to those against Apple and that adjudication of the claims against Apple first will resolve major issues concerning the claims against the Carrier Defendants. As noted above, the only accused product in this case is the iPhone. Qualcomm supplies the relevant chips containing the allegedly infringing source code, Apple manufactures the phones with the chips, and the Carrier Defendants (as their corporate representatives have testified) resell the phone, playing no role in the development, design, or implementation of the relevant software code. (Dkt. Nos. 133 at 3; 133-2 at 1–4; 133-3 at 6:10–25; 133-4 at 2; 133-5 at 5:24–6:3.) What is more, the Carrier Defendants have "agree[d] to be bound by the invalidity and infringement rulings in this case as to Apple." (Dkt. No. 133 at 1–2 n.1.) The Court, in granting the relief herein, relies upon and intends to enforce such agreement. Thus, infringement and invalidity—two of the biggest issues in any patent case—will

be resolved by the first trial against Apple. Accordingly, severing and staying the claims against the Carrier Defendants is appropriate in this case.

The Court further notes that one of SLC's primary objections to the Carrier Defendants' Motion centers on the asserted damages in this case. SLC has indicated that it intends to pursue greater damages against the Carrier Defendants than it does against Apple, which, according to SLC, entitles it to pursue its claims simultaneously. (Dkt. Nos. 155 4–5; 159 at 4.) The Court disagrees that disparate damage models mandate simultaneous adjudication. While the Court will not prevent SLC from putting on evidence of damages to which it claims entitlement, the Court will not permit SLC to obtain a double recovery. Thus, if SLC maintains it current damage models (seeking a greater royalty from the Carrier Defendants than from Apple) the Court will enforce a clear delineation between SLC's damages evidence offered at the separate and resulting trials. SLC will be entitled to present its unique royalty arguments as to the Carrier Defendants in the second trial so long as two conditions are satisfied: (1) the damages in the second trial must be limited to the Carrier Defendants; and (2) the damages in the first trial must relate solely to the manufacturer Defendant (Apple) and not include the Carrier Defendants (AT&T and Verizon).

For the reasons stated above, the Court **GRANTS** the Carrier Defendants' Motion to Sever and Stay. (Dkt. No. 133.) Accordingly, the Clerk shall open a new case number into which the claims against the Carrier Defendants shall be moved, leaving the claims against Apple in the present case.

**So ORDERED and SIGNED this 12th day of July, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE